Leon Silver (SBN: 012884)
*lsilver@grsm.com*
Tony Salvatore (SBN: 033783)
*tsalvatore@grsm.com*
Sean P. Flynn (NV SBN: 15408)
*sflynn@grsm.com*
**GORDON REES SCULLY MANSUKHANI, LLP**
Two North Central Avenue, Suite 2200
Phoenix, AZ 85004
Telephone: (602) 794-2490

*Attorneys for Defendant*
IC System, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pete Taylor, an Individual, | Case No.: 4:20-cv-00494-CKJ |
| Plaintiff, | |
| vs. | **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; AND** |
| IC System, Inc., a Minnesota corporation, | **REQUEST FOR JUDICIAL NOTICE** |
| Defendant. | **(ORAL ARGUMENT REQUESTED)** |

Defendant, IC System, Inc. ("ICS"), by and through its counsel of record Gordon Rees Scully Mansukhani, LLP, hereby moves to dismiss the Second Amended Complaint [Dkt. 35.] ("SAC") pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), for failure to state a claim upon which relief can be granted. This Motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION:

Plaintiff has had three opportunities to allege two claims pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq*. ("FDCPA"). Plaintiff, however, has again failed to state facts sufficient to state a claim upon which relief can be granted, and this lawsuit should be dismissed.

The crux of Plaintiff's complaint remains that ICS allegedly reported a debt that does not belong to Plaintiff on Plaintiff's credit report. This is a factual impossibility. Because of these reasons, Plaintiff's complaint should be dismissed, *with prejudice*.

### II.   PROCEDURAL BACKGROUND:

On October 7, 2020, Plaintiff filed this action in the Arizona Small Claims Court in the County of Cochise. [Dkt. 1-2.] On November 9, 2020, Defendant timely removed this matter to this Court. [Dkt. 1.] On November 16, 2020, Defendant timely answered the original complaint. [Dkt. 8.]

On February 11, 2021, Plaintiff's Counsel filed a motion for leave to file a First Amended Complaint. [Dkt. 11.] On March 5, 2021, ICS filed its notice of non-opposition, but reserved the right to file a Motion to Dismiss. [Dkt. 19.] On May 25, 2021, this Court granted Plaintiff's motion for leave to file a First Amended Complaint. [Dkt. 21.] On June 4, 2021, Plaintiff filed his first amended complaint. [Dkt. 22.]

On June 21, 2021, ICS filed its Motion to Dismiss. [Dkt. 23.] On July 27, 2021, Plaintiff filed his Opposition [Dkt. 27], and on August 3, 2021, ICS filed its Reply. [Dkt. 29.] On March 11, 2022, the Court entered its Order Granting ICS' Request for Judicial Notice and Granting in part its Motion to Dismiss, without prejudice. [Dkt. 34.]

-1-

On April 8, 2022, Plaintiff filed his SAC. [Dkt. 35.]

## III. FACTUAL ALLEGATIONS:

Plaintiff alleges in September 2020 he discovered ICS was reporting a collection account on his credit report. [Dkt. 35, ¶ 9.][1] Plaintiff also attaches as Exhibit A, a redacted page from his September 16, 2020 Experian credit report. [*Id*., Ex. A.] Plaintiff then concludes/alleges that ICS reported a past due medical debt to Plaintiff's credit report, despite the irrefutable fact that Data Furnishers, like ICS, do not report trade line information to any specific consumer's credit report.

Then, Plaintiff alleges on September 17, 2020, he spoke with ICS who told him the debt was a medical debt, but that it belonged to someone other than him. [*Id*. at ¶¶ 12-15.] Plaintiff next alleges that a few days after his phone call with ICS, he disputed the debt, *with Experian*. [*Id*., at ¶ 16.] This is a critically important new factual allegation because under the Fair Credit Reporting Act, a credit reporting agency, like Experian, has to respond *in writing* to the dispute within 30 days of the dispute being submitted.[2] Experian's response would document the date of the dispute, the outcome of the investigation and the date of the response. Thus, Plaintiff knows when the dispute was submitted.[3]

Then Plaintiff alleges ICS continued to report the debt as belonging to Plaintiff and failed to notate that it was disputed. [*Id*. at ¶¶ 19-20.] Plaintiff again fails, however, to support these conclusory allegation by identifying when he noticed the debt was still

---

[1] It is a common misconception to say a Data Furnisher, such as ICS, reported any trade line to any specific consumers account. https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf, *see* § 5.0, page 21-22. Rather, it is the credit reporting agency that assigns a tradeline to a specific consumer's account.

[2] https://www.consumerfinance.gov/ask-cfpb/if-a-credit-reporting-error-is-corrected-how-long-will-it-take-before-i-find-out-the-results-en-1339/; *see also*, 15 U.S.C. § 1681i(a)(1)(A).

[3] ICS received Plaintiff's dispute on October 6, 2020, just one day before the Small Claims Complaint was filed. ICS requested that the tradeline be deleted on October 14, 2020. Even if Plaintiff had submitted the dispute on September 16, the FCRA deadline to respond would have be October 16.

-2-

1 reporting.  Plaintiff also fails to provide facts concerning the conclusory allegation that
2 ICS continued to report the debt on Plaintiff's credit after receiving the dispute, and
3 failed to notate the debt as disputed by providing any facts about Experian's required
4 FCRA results of investigation report, and/or failing to provide a post-dispute credit
5 report showing the ICS tradeline is still on his report and/or not marked as disputed.
6 Again, these are basic facts within Plaintiff's knowledge that would create a plausible
7 claim.

8  Finally, Plaintiff concludes that because of ICS, his credit score has decreased;
9 his ability to obtain credit was harmed; and he was emotionally disturbed as a result.
10 [*Id*. at ¶¶ 21-23.]  Plaintiff again, however, does not state what the score decrease was,
11 or what credit applications were denied *because* of ICS' alleged reporting, or the nature
12 of his allege emotional distress.  In other words, these are purely bald conclusions – not
13 facts.

## IV. LEGAL ARGUMENTS:

### A. Legal Standards.

16  Federal Rule of Civil Procedure 8 states a plaintiff must provide "a short and
17 plain statement of the claim showing that the pleader is entitled to relief" *Fed. R. Civ.*
18 *Proc.* 8(a)(2).  But, Federal Rules of Civil Procedure, Rule 12 authorizes a motion to
19 dismiss a claim for "failure to state a claim upon which relief can be granted[.]" *Fed. R.*
20 *Civ. Proc.* 12(b)(6).

21  While brevity in a pleading is required, it is not enough simply to allege that a
22 wrong has been committed and demand relief. The underlying requirement is that a
23 pleading give "fair notice" of the claim being asserted and the "grounds upon which it
24 rests." *Bell Atlantic Corp. v. Twombly* (2007) 550 US 544, 555 (internal quotes
25 omitted); *Swierkiewicz v. Sorema N.A.* (2002) 534 US 506, 513 (same); and *Oliver v.*
26 *Ralphs Grocery Co.* (9th Cir. 2011) 654 F3d 903, 908.

27  While a complaint need not plead "detailed factual
 allegations," the factual allegations it does include "must be
28  enough to raise a right to relief above the speculative level."

-3-

**Gordon Rees Scully Mansukhani, LLP**
Two North Central Avenue Suite 2200
Phoenix, AZ 85004

> Further, Fed.R.Civ.P. 8(a)(2) requires a showing that a plaintiff is entitled to relief "rather than a blanket assertion" of entitlement to relief. The complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right to action."

*Taylor v. IC System, Inc.*, (U.S.D.C. Ariz., March 11, 2022) Case No.: 4:20-cv-00494-CKJ (citations omitted).

This requirement "serves to prevent costly discovery on claims with no underlying factual or legal basis." *Migdal v. Rowe Price-Fleming Int'l, Inc.* (4th Cir. 2001) 248 F3d 321, 328 ("plaintiffs cannot simply promise the court that once they have completed discovery, something will turn up.")

Further, the Supreme Court has expressly rejected a rule first stated in *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" *Conley v. Gibson* (1957) 355 US 41, 45-46. In fact, the Supreme Court held this "no set of facts" language "has earned its retirement" and "is best forgotten." *Bell Atlantic Corp. v. Twombly*, *supra*, 550 US at 562.

In addition to providing "fair notice" of the claim, a pleading's factual allegations must show "that the pleader is entitled to relief." To do so, the pleading must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, *supra*, 550 US at 570; *Johnson v. City of Shelby, Miss.* (2014) 574 US 10, 12 (*Twombly/Iqbal* require that a plaintiff "plead facts sufficient to show that [the] claim has substantive plausibility.") This pleading rule requires that a party "demonstrate the plausibility, as opposed to conceivability, of its causes of action in the complaint." *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.* (3rd Cir. 2012) 692 F3d 283, 303; *see also Levin v. Miller* (7th Cir. 2014) 763 F3d 667, 671 (*Twombly/Iqbal* "wrote that judges may bypass implausible allegations and insist that complaints contain enough detail to allow courts to separate fantasy from claims worth litigating").

The purpose of the plausibility requirement is "to prevent settlement extortion -

1  using discovery to impose asymmetric costs on defendants in order to force a settlement
2  advantageous to the plaintiff regardless of the merits of his suit." *Pension Benefit*
3  *Guaranty Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan*
4  *Stanley Investment Mgmt. Inc.* (2nd Cir. 2013) 712 F3d 705, 719; *Atieh v. Riordan* (1st
5  Cir. 2013) 727 F3d 73, 76 ("The plausibility standard is a screening mechanism
6  designed to weed out cases that do not warrant either discovery or trial"); *Bell Atlantic*
7  *Corp. v. Twombly, supra*, 550 US at 558-559; *see also Somers v. Apple, Inc.* (9th Cir.
8  2013) 729 F3d 953, 966 ("specificity of facts is warranted before permitting a case to
9  proceed into costly and protracted discovery in an antitrust case.")

10  Plausibility is not "akin" to probability "but it asks for more than a sheer
11  possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal* (2009) 556 U.S.
12  662, 678.  If a claim sets forth facts that are "merely consistent with" defendant's
13  liability, it "stops short of the line between possibility and plausibility of 'entitlement to
14  relief.'" *Id.*

15  "To survive a motion to dismiss, a complaint must contain sufficient factual
16  matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft*
17  *v. Iqbal*, *supra*, 556 U.S. at 678 (quoting *Bell Atlantic v. Twombly* (2007) 550 U.S. 544,
18  570 (2007)).  "Determining whether a complaint states a plausible claim for relief" is "a
19  context-specific task that requires the reviewing court to draw on its judicial experience
20  and common sense." *Ashcroft v. Iqbal, supra*, 556 US at 678-79.  "A claim has facial
21  plausibility when the plaintiff pleads factual content that allows the court to draw the
22  reasonable inference that the defendant is liable for the misconduct alleged." *Id.*
23  "[L]abels and conclusions" or "a formulaic recitation of the elements of a cause of
24  action will not do." *Bell Atlantic Corp. v. Twombly, supra,* 550 US at 555.

25  **B.     Judicial Notice.**

26  For purposes of a Rule 12(b)(6) motion a court can "augment" the facts and
27  inferences from the body of the complaint with "matters of public record, and facts
28  susceptible to judicial notice." *Haley v. City of Boston* (1st Cir. 2011) 657 F3d 39, 46;

**Gordon Rees Scully Mansukhani, LLP**
Two North Central Avenue Suite 2200
Phoenix, AZ 85004

*Coto Settlement v. Eisenberg* (9th Cir. 2010) 593 F3d 1031, 1038.  This Court may take judicial notice of facts "not subject to reasonable dispute because it [. . . ] (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Fed. R. Evid*. 201(b)(2); *Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 (9th Cir. 2015).

Here, pursuant to Federal Rule of Evidence 201(b)(2), Defendant asks this Court to take Judicial Notice of the "U.S. Consumer Financial Protection Bureau's 2012 Key Dimensions and Processes in the U.S. Credit Reporting System: A review of how the nation's largest credit bureaus manage consumer data," wherein at section 5.0 on pages 21-22, the CFPB explains how credit reporting works relative to the assignment of trade lines to an individual's credit report – a subject matter which is central to the allegations of Plaintiff's SAC and not subject to any reasonable dispute since the document comes from a federal agency charged with promulgating rules and regulations for, *inter alia*, credit reporting.

The CFPB explains, in relevant part:

> Once the NCRAs have received trade line information from a furnisher *<u>they must assign it to a specific consumer's identity</u>*. . . . In a typical month, an NCRA receives updates on over 1.3 billion trade lines. With this much information included in and added to their databases, the NCRAs face technical and operational challenges in attributing information to the proper consumer's file.
>
> …
>
> Typically, the furnisher reports the personally identifying information that was provided by the consumer in the consumer's original application for credit or through updates (such as for current address or married name) that a consumer may provide in the course of his or her relationship with the furnisher.
>
> …
>
> Once a trade line has passed the NCRAs' initial vetting and screening, *<u>the NCRAs assign or post that trade line to the credit file of a specific consumer</u> <u>if they believe there is a match</u>*.

https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf, see §

5.0, page 21-22 (last visited on June 16, 2021)(emphasis added).

**C.     Plaintiff Failed to State a Claim Under 15 U.S.C. § 1692e(8).**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. 15 U.S.C. § 1692e(8).

In order to state a claim under 15 U.S.C. § 1692e(8), a plaintiff must allege:

1. A Debt Collector[4];
2. communicated[5], or threatened to communicate,
3. to a third party;
4. credit information concerning a Consumer[6];
5. that the Debt Collector knew, or should have known, was false; including the failure to communicate that a disputed debt is disputed.

It is an indisputable fact that ICS did not report the subject debt to Plaintiff's credit report. As the CFPB has stated, furnisher's like ICS submit trade line information to credit reporting agencies, and the credit reporting agencies decide to which credit report the trade line information should be assigned, *if any*.

Plaintiff's allegations that he disputed the debt with Experian and ICS continued to report the debt as belonging to Plaintiff and failing to mark it disputed also fall short. These conclusory allegations do not plausibly suggest a claim against ICS. Rather, they are the type of speculative allegations that merely provide a blanket assertion of an entitlement to relief. As this Court has already recognized relative to the First Amended Complaint, "[t]he complaint 'must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right to action.'"

---

[4] 15 U.S.C. 1692a(6)
[5] 15 U.S.C. 1692a(2)
[6] 15 U.S.C. 1692a(3)

-7-

1    As demonstrated above, and as recognized by this Court[7], Plaintiff spoke with
2 ICS on September 17, 2020.  *Days* later he disputed the debt with Experian.  Plaintiff
3 then filed this suit on October 7, 2020.  Pursuant to the FCRA, ICS had 30 days to
4 investigate and respond to the dispute, but Plaintiff filed suit before ICS had an
5 opportunity to respond to the dispute.
6    Thus, Plaintiff has failed to state facts sufficient to state a claim upon which relief
7 can be granted, and this claim should be dismissed.

**D.    Plaintiff Failed to State a Claim Under 15 U.S.C. § 1692f.**

The FDCPA prohibits a debt collector from using any "unfair or unconscionable" means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  Congress intended for this section of the FDCPA to only cover claims not specifically addressed in other areas of the FDCPA, and SCOTUS has interpreted it as such:

> This Court has not had occasion to construe the terms "unfair" and "unconscionable" in § 1692f. The FDCPA's legislative history suggests that Congress intended these terms as a backstop that would enable "courts, where appropriate, to proscribe other improper conduct ... not specifically addressed" by the statute. S.Rep. No. 95–382, p. 4 (1977). Courts have construed these terms, consistent with other federal and state statutes that employ them, to borrow from equitable and common-law traditions. *See, e.g., LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200–1201 (C.A.11 2010) (per curiam ); *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473–474 (C.A.7 2007).

*Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1418, fn. 4 (2017).  Therefore, while the Court relied on *Ruvalcaba v. Ocwen Loan Servicing, LLC*, No. 15-CV-744-BAS-DHB, 2016 WL 7178855, at *5 (S.D. Cal. Dec. 9, 2016), and *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 536 (6th Cir. 2014) in its Order granting Defendant's Motion to Dismiss the FAC, those cases pre-date the *Midland Funding, LLC v. Johnson* SCOTUS opinion.

Thus, the controlling authority relative to 1692f claims is:

---

[7] *Taylor v. IC System, Inc.*, (U.S.D.C. Ariz., March 11, 2022) Case No.: 4:20-cv-00494-CKJ, fn. 3.

**Gordon Rees Scully Mansukhani, LLP**
Two North Central Avenue Suite 2200
Phoenix, AZ 85004

> Section 1692f "serves a backstop function, catching those 'unfair practices' which somehow manage to slip by §§ 1692d & 1692e." *Edwards v. McCormick*, 136 F. Supp. 2d 795, 806 (S.D. Ohio 2001). Given this purpose, "courts have dismissed claims under 15 U.S.C. § 1692f where such claims are based on facts that are also the basis for another more specific FDCPA claim." *Martin v. Target Card Servs.*, No. CV 17-5372 PA (MRWx), 2018 WL 2723258, at *5 (C.D. Cal. Apr. 24, 2018). *See, e.g., Lake v. Consumer Adjustment Co., Inc.*, No. 4:15-CV-01495-JCH, 2015 WL 8770719, at *4 (E.D. Mo. Dec. 14, 2015) (dismissing a plaintiff's claim under Section 1692f which arose from the same set of factual allegations as his Section 1692e claim); *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) (holding that the plaintiffs' Section 1692f claim was deficient where the plaintiffs did not "identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA."); *Turner v. Prof'l Recovery Servs., Inc.*, 956 F. Supp. 2d 573, 580-81 (D.N.J. 2013) (granting summary judgment for defendant on § 1692f claim based entirely on alleged conduct encompassed by Sections 1692c(a)(1) and 1692d of the FDCPA).

*Muzyka v. Rash Curtis & Assocs.*, No. 2:18-CV-01097 WBS, 2019 WL 2869114, at *6 (E.D. Cal. July 3, 2019); *see also*, *Rush v. Portfolio Recovery Assoc., LLC*, 977 F.Supp. 2d 414, 432 (D.N.J. 2013)

In *Sussman v. I.C. System, Inc.*, 928 F.Supp.3d 784, 797 (S.D.N.Y. 2013), the court determined the plaintiff's Section 1692f claim was deficient "because his allegations fail to 'identify any misconduct beyond that which Plaintiff [] assert[s] violate[s] other provisions of the FDCPA.'" (*quoting Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006).

Similarly, in *Ashlund v. I.C. System, Inc.*, No. 3:17CV65 (JBA), 2018 WL 3448163 (D. Conn. July 17, 2018) that Court recognized:

> Courts have dismissed Section 1692f claims that do "not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA." *Id.*; *see also May v. Asset Acceptance LLC*, No. 11-CV-525S, 2013 WL 1337173, at *7 (W.D.N.Y. Mar. 29, 2013). Here, Plaintiff's claim that Defendant's calls qualified as unconscionable behavior under Section 1692f is based on the same alleged conduct as Plaintiff's Sections 1692d and d(5) claims and similarly is dismissed.

*Ashlund v. I.C. System, Inc.,* No. 3:17CV65 (JBA), 2018 WL 3448163, at *5 (D. Conn.

July 17, 2018).

Here, Plaintiff does not identify any misconduct beyond that which he alleges violated 1692e.  In fact, Plaintiff specifically alleges the conduct that serves as the basis for his Section 1692f claim is the same credit reporting of the subject debt that serves as the basis for Plaintiff's 1692e claims.

Furthermore, even if a 1692f claim could be based on the exact same facts as a 1692e claim, it suffers the same fate.  Plaintiff's conclusory allegations do not rise to the level of a plausible claim.

Thus, Plaintiff has failed to state facts sufficient to state a claim upon which relief can be granted, and this claim should be dismissed.

## V.   CONCLUSION:

As demonstrated above, Plaintiff has failed to state facts sufficient to state a claim upon which relief can be granted.  Plaintiff failed to allege that ICS did, or threatened, to communicate the debt to a third party.  Moreover, the CFPB has clearly taken the position that furnisher's like ICS do not report trade lines to specific credit reports.  Rather, the credit reporting agencies make an independent assessment of whose credit report particular trade lines are assigned – and thus mistakes, by the credit reporting agencies, will be made.  Lastly, Plaintiff's 1692f claim is unsupported by any independent allegations of wrongdoing.

Thus, ICS requests Plaintiff's first amended complaint be dismissed in its entirety, *with prejudice*.

Dated: May 6, 2022

**GORDON REES SCULLY MANSUKHANI, LLP**

By: __s/Sean P. Flynn_____
    Leon Silver
    Tony Salvatore
    Sean P. Flynn
    *Attorneys for Defendant*
    IC System, Inc.