**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Pete Taylor,
    Plaintiff,
vs.
IC System Incorporated, et al.,
    Defendants.

No. CIV 20-494-TUC-CKJ

**ORDER**

Pending before the Court is the Motion to Dismiss for Failure to State a Claim and Request for Judicial Notice (Doc. 39) filed by IC System, Inc. ("ICS"). Plaintiff Pete Taylor ("Taylor") has filed a response (Doc. 27) and ICS has filed a reply (Doc. 29). Oral argument has been requested. Because the parties have thoroughly presented the facts and briefed the issues, the Court declines to set this matter for oral argument. See LRCiv 7.2(f); 27A Fed.Proc., L. Ed. § 62:361 (March 2021) ("A district court generally is not required to hold a hearing or oral argument before ruling on a motion.").

*Factual and Procedural Background*

On April 8, 2022, Taylor filed a Second Amended Complaint ("SAC") in this case.[1] The SAC alleges ICS began reporting a collection account on Taylor's Experian credit report that did not belong to Taylor. Taylor called ICS on September 17, 2020, and informed ICS's agent that ICS was reporting a collection account that did not belong to him on his credit

---

[1] Unless otherwise stated, the facts are taken from the SAC.

reports. After being unable to locate Taylor by his personal identifiers, ICS's agent advised Taylor that the debt reporting on Taylor's credit report was a medical debt ("the Debt") incurred in Alabama and was owed by a third party with a different name and a different social security number.

Days after ICS confirmed that the subject debt did not belong to him, Taylor submitted a dispute to Experian challenging ICS's reporting of the Debt and "requested [ICS] and Experian remove [the Debt] from his Experian credit report." SAC (Doc. 35, p. 3). Experian notified ICS of Taylor's dispute within five days of receiving the dispute.

ICS continued to report the Debt as belonging to Taylor to Experian. ICS did not request Experian to notate on Taylor's Experian credit report that the Debt was disputed by Taylor.

Taylor's credit score has decreased as a result of ICS's erroneous credit reporting, which has frustrated Taylor's ability to obtain credit. Taylor also alleges he has suffered emotional distress and anxiety as a result of ICS's erroneous credit reporting. After Taylor filed suit against ICS, ICS removed the Debt from Taylor's Experian credit report.

The SAC alleges violations of 15 U.S.C. §§ 1692e(8) and 1692f, under the Federal Debt Collections Practices Act ("FDCPA").

On May 6, 2022, ICS filed a Motion to Dismiss for Failure to State a Claim and Request for Judicial Notice ("MTD") (Doc. 39). A response (Doc. 43) and a reply (Doc. 45) have been filed.

*Request for Judicial Notice of the U.S. Consumer Financial Protection Bureau's 2012 Key Dimensions and Processes in the U.S. Credit Reporting System ("CFPB Report")*

ICS requests the Court take judicial notice of the CFPB Report. This report is available on an official website of the United States government. *See*, https://www.consumerfinance.gov/data-research/research-reports/key-dimensions-and-processes-in-the-u-s-credit-reporting-system/. The Court finds it appropriate to take judicial notice of this document. *Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 (9th Cir.

2015), *citations omitted* (the Court may take judicial notice of "official information posted on a governmental website, the accuracy of which [is] undisputed"); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (the court can take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet," such as websites run by governmental agencies), *citations omitted*. The Court will grant ICS's request.

As pointed out by ICS:

> Once the NCRAs have received trade line information from a furnisher they must assign it to a specific consumer's identity. . . In a typical month, an NCRA receives updates on over 1.3 billion trade lines. With this much information included in and added to their databases, the NCRAs face technical and operational challenges in attributing information to the proper consumer's file.
>
> . . .
>
> Typically, the furnisher reports the personally identifying information that was provided by the consumer in the consumer's original application for credit or through updates (such as for current address or married name) that a consumer may provide in the course of his or her relationship with the furnisher.
>
> . . .
>
> Once a trade line has passed the NCRAs' initial vetting and screening, the NCRAs assign or post that trade line to the credit file of a specific consumer if they believe there is a match.

MTD (Doc. 39, p. 7), *citing* CFPB Report, § 5.0, pp. 21-22. NCRAs are nationwide consumer reporting agencies and, for purposes of the CFPB Report, means Equifax, Experian, or TransUnion. CFPB Report, Glossary, p. 40.

Additionally, the CFPB Report states that the NCRAs' data screens "rely on underlying furnisher data to be valid." CFPB Report, § 4.2, p. 19. The CFPB Report also discuses the NCRAs reliance upon data furnished to them:

> The NCRAs do not conduct independent checks or audits to determine if the data is accurate, such as contacting a consumer to ask if she is properly associated with an account or if the balance reported on an account is true, or checking the record-keeping practices of a furnisher. The NCRAs generally rely on furnishers to report information on consumers that is complete and accurate.

*Id*. Indeed:

> [F]urnishers have enhanced obligations to supply accurate data. Each furnisher is

required to "establish and implement reasonable written policies and procedures concerning the accuracy and integrity of the information it furnishes to consumer reporting agencies."[48] The procedures should address "deleting, updating, and correcting information in the furnisher's records, as appropriate, to avoid furnishing inaccurate information."[49] The procedures must be appropriate to the "nature, size, complexity, and scope of each furnisher's activities."[50] Appropriate procedures include using standard data reporting formats, maintaining records for a reasonable period of time, providing appropriate oversight of service providers (e.g., companies that provide core processing systems or software used for recordkeeping and account management), furnishing information in a way that prevents re-aging,[g] duplicative reporting, association of information with the wrong consumer, and providing sufficient identifying information about consumers.

> [g] Re-aging in this context refers to erroneously extending the reporting period of derogatory consumer information by creating a new, later start date when the derogatory event occurred, thus pushing back the clock for removing the derogatory item from the credit report.

[48] 12 C.F.R. § 1022.42, (2012).
[49] 12 C.F.R. pt. 1022, Appendix E, III(h) (2012).
[50] 12 C.F.R. § 1022.42(a) (2012).

*Id*. at § 4.3, p. 20.

*Requirement to State a Claim Upon Which Relief Can Be Granted*

As the Court has previously stated, a complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a). The United States Supreme Court has found that a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id.* 555; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss[.]").

The Court considers the SAC in light of *Twombly* and must determine if Taylor has "nudge[d] [the] claims across the line from conceivable to plausible." *Twombly.* 550 U.S. at 570. This requires "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed

to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007); *see also Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) (for a complaint to survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief)."

This Court must take as true all allegations of material fact and construe them in the light most favorable to Taylor. *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). Nonetheless, the Court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

*Alleged Violations of FDCPA § 1692e(8)*

The FDCPA states a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This includes a requirement that a debt collector not "[c]ommunicat[e] or threaten[] to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

ICS asserts Taylor has failed to state a claim for violations of this statute because it did not report the Debt to Taylor's credit report. Rather, as a furnisher, it submitted trade line information to credit reporting agencies. However, Taylor argues that, by providing incorrect information to Experian (a third party), ICS communicated false credit information to a third party.[2] ICS does not point to any authority that, to state a claim under § 1692e(8), reporting of a debt must be to a credit report as opposed to any third party.

ICS argues that the Report demonstrates that it is NCRAs who determine which consumer's credit report to which a negative trade line is assigned. *See* Report, p. 21.

---

[2]Taylor alleges, "Defendant reported to Experian a past due medical debt allegedly owed by Plaintiff to Foley Emergency Physicians in the amount of $935." SAC (Doc. 35, p. 2). The supporting attachment, however, does not reference Taylor. *Id*. at Ex. A.

- 5 -

However, the Report also recognizes that a furnisher typically reports personally identifying information. *Id*. In other words, although the attachment to the SAC does not reference Taylor, the Court finds Taylor's allegation that "Defendant reported to Experian a past due medical debt allegedly owed by Plaintiff to Foley Emergency Physicians in the amount of $935" sufficiently alleges ICS represented to a third party a delinquent account belonging to Taylor. *See* SAC (Doc. 35, p. 2; Ex. A).

Additionally, ICS asserts that its failure to mark the Debt as disputed after Taylor disputed the debt as belonging to Taylor with Experian and ICS fails to state a claim because it is speculative. ICS points out the SAC states Taylor spoke with ICS on September 17, 2020, and days later he disputed the debt with Experian. Taylor then filed his suit on October 7, 2020. ICS asserts that, pursuant to the FCRA, it had 30 days to investigate and respond to the dispute, but Taylor "filed suit before ICS had an opportunity to respond to the dispute." Motion (Doc. 39, p. 9). Taylor asserts, however, § 1692e(8) does not require more than what Taylor has alleged. In other words, that ICS may have a timing defense does not affect the fact Taylor has stated a claim upon which relief can be granted under § 1692e(8).

The Court agrees Taylor has adequately stated a claim upon which relief can be granted. Taylor has alleged ICS communicated to Experian, a third party, credit information which was known or which should have been known to be false, including that ICS failed to communicate the Debt was disputed. *See e.g. Creager v. Columbia Debt Recovery, LLC*, No. 2:21-CV-00431-BJR, 2021 WL 3187596, at *4 (W.D. Wash. July 28, 2021) (finding allegations a debt collector reported false information concerning plaintiff to a credit reporting agency to be sufficient to state a §1692e(8) claim at the pleading stage).

*Alleged Violations of FDCPA § 1692f*

Under the FDCPA, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Taylor alleges ICS's conduct of

continuing to report the Debt to Experian despite having actual knowledge that the debt belonged to a third party violates this provision. As summarized by ICS:

> Congress intended for this section of the FDCPA to only cover claims not specifically addressed in other areas of the FDCPA, and SCOTUS has interpreted it as such:
>
>> This Court has not had occasion to construe the terms "unfair" and "unconscionable" in § 1692f. The FDCPA's legislative history suggests that Congress intended these terms as a backstop that would enable "courts, where appropriate, to proscribe other improper conduct ... not specifically addressed" by the statute. S.Rep. No. 95–382, p. 4 (1977). Courts have construed these terms, consistent with other federal and state statutes that employ them, to borrow from equitable and common-law traditions. *See, e.g., LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200–1201 (C.A.11 2010) (per curiam); *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473–474 (C.A.7 2007).

Motion (Doc. 39, p. 8), *citing Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1418, fn. 4 (2017) (Sotomayor, J., dissenting). ICS points out the cases relied upon by this Court in addressing the First Amended Complaint pre-dated this authority. Further, ICS argues "[s]ection 1692f 'serves a backstop function, catching those "unfair practices" which somehow manage to slip by §§ 1692d & 1692e.'" Motion (Doc. 39, p. 9), *citations omitted*. Because Taylor has not alleged any "misconduct beyond that which [Taylor] [] assert[s] violate[s] other provisions of the FDCPA" ICS argues Taylor's claim is deficient. *Sussman v. I.C. System, Inc.*, 928 F.Supp.3d 784, 797 (S.D.N.Y. 2013); *Ashlund v. I.C. System, Inc.*, No. 3:17CV65 (JBA), 2018 WL 3448163 (D. Conn. July 17, 2018). Motion (Doc. 39, p. 9).

However, neither the majority opinion nor the dissenting opinion in *Midland* found that one action cannot violate multiple section of the FDCPA. *Midland* held "that filing (in a Chapter 13 bankruptcy proceeding) a proof of claim that is obviously time barred is not a false, deceptive, misleading, unfair, or unconscionable debt collection practice within the meaning of the Fair Debt Collection Practices Act." *Midland*, 137 S. Ct. at 1415–16. However, ICS points to a line of authority where § 1692f claims are dismissed when they are based on facts that also serve as the basis for a more specific FDCPA claim. *See e.g., Martin v. Target Card Servs.*, No. CV 17-5372 PA (MRWx), 2018 WL 2723258 (C.D. Cal.

Apr. 24, 2018); *Lake v. Consumer Adjustment Co., Inc.*, No. 4:15-CV-01495-JCH, 2015 WL 8770719 (E.D. Mo. Dec. 14, 2015); *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006); *Turner v. Prof'l Recovery Servs., Inc.*, 956 F.Supp. 2d 573, 580-81 (D.N.J. 2013); *Sussman v. I.C. System, Inc.*, 928 F.Supp.3d 784, 797 (S.D.N.Y. 2013).

The Court does not find *Midland* affects the authority set forth in *Clark v. Capital Credit & Collection Service*, 460 F.3d 1162, 1177 (9th Cir. 2006), *Ruvalcaba v. Ocwen Loan Servicing, LLC*, No. 15-CV-744-BAS-DHB, 2016 WL 7178855, at *5 (S.D. Cal. Dec. 9, 2016), and *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 536 (6th Cir. 2014). Rather, as in *Clark*, Taylor has raised issues under multiple provisions of the FDCPA. However, the conduct which serves as the basis for the § 1692f claim is encompassed in the conduct for which the § 1692e(8) claims are based. The Court finds Taylor has failed to state a claim upon which relief can be granted as to his § 1692f claim; dismissal of this claim is appropriate.

Accordingly, IT IS ORDERED:

1. The Request for Judicial Notice (Doc. 39) is GRANTED.

2. The Motion to Dismiss for Failure to State a Claim and Request for Judicial Notice (Doc. 39) is GRANTED IN PART AND DENIED IN PART. Taylor's FDCPA § 1692f claim is DISMISSED WITH PREJUDICE. Taylor's claims pursuant to FDCPA §1692e(8) may proceed.

3. ICS shall file an Answer to the Second Amended Complaint within 20 days of the date of this Order.

4. The stay of discovery in this matter is lifted. If needed, the parties shall submit a proposed order of modified deadlines.

DATED this 5th day of October, 2022.

_____
Cindy K. Jorgenson
United States District Judge